UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER WILSON,<br><br>        Plaintiff,<br><br>    v.<br><br>KATHLEEN ALLISON, et al.,<br><br>        Defendants. | Case No. 22-cv-04838-JSC<br><br>**ORDER OF SERVICE; DENYING MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re. Dkt. No. 2. |

## INTRODUCTION

Plaintiff, a California prisoner at Salinas Valley State Prison ("SVSP") who is proceeding without an attorney, filed this civil rights action under 42 U.S.C. § 1983 against the Secretary of the California Department of Corrections and Rehabilitation ("CDCR") Kathleen Allison; SVSP Warden Trent Allen; SVSP Captain Lomeli; and SVSP Correctional Counselor Pizano. Plaintiff has also filed a motion for a temporary restraining order ("TRO").[1] Plaintiff has been granted leave to proceed in forma pauperis in a separate order. For the reasons discussed below, the complaint is ordered served upon Defendants, and the motion for a TRO is DENIED.

## BACKGROUND

In his complaint, Plaintiff claims that Defendants are violating his constitutional rights by forcing him to have a cellmate and removing him from protective custody. (ECF No. 1 at 2.) He seeks an injunction ordering Defendants to keep him in both a single cell and protective custody. (*Id.* at 25.) In his motion for a TRO, he requests that such injunctive relief be granted immediately and remain in place until disposition of this case. (ECF No. 2 at 6.) Plaintiff attaches to his complaint exhibits of his prison medical records, housing records, and correspondence between

---

[1] Defendants have not been served or appeared. Plaintiff states that he has served a copy of the complaint, exhibits, and the motion for a TRO on the California Attorney General. (ECF Nos. 1-4; 2 at 12.)

him and Defendants. (ECF Nos. 1-1 - 1-3.)

Plaintiff alleges that he suffers from two general medical conditions: he has a spinal cord injury that prevents his use of his left arm and leg and limits his head movement, and he has a urological condition that makes urinating painful and slow. (ECF No. 1 at 10-12.) He alleges that he uses a wheelchair and cannot physically defend himself when he is attacked. (*Id.* at 10, 12-13.) He alleges that he was attacked by an inmate on August 11, 2020, as he entered a building in Facility A at SVSP, and another inmate assaulted him in the dayroom on October 25, 2021. (*Id.* at 11, 12-13.)

Plaintiff has been in CDCR custody since 2000, and he arrived at SVSP on July 12, 2019. (ECF No. 1.1 at 23.) He alleges in the complaint that he has been in a single cell from 2015 to 2021.[2] (ECF No. 1 at 13.) Prison records attached to the complaint indicate that he was placed in a single cell on November 8, 2021, based upon the recommendation of mental health professionals for a temporary, 90-day, single-cell placement. (ECF No. 1.3 at 2, 58.) After 90 days, on February 7, 2019, and again on August 23, 2019, mental health professionals cleared him for a double cell. (*Id.*) Nevertheless, at his annual classification hearings at SVSP on July 30, 2019, and August 18, 2020, Defendant Pizano and another official who is not a Defendant approved his continued placement in a single cell pending further review by other prison housing officials. (ECF No. 1.1 at 23-27.) At the next annual classification hearing, on October 1, 2021, Defendant Pizano approved him for a double cell with a "compatible" inmate based on a number of factors: his mental health concerns no longer required single-celling, he had no in-cell fights since two fights with his cellmate in 2007, he had no history of out-of-cell violence, he had no history of sexual predation, and he did not pose a safety threat to a cellmate. (ECF No. 1 at 14; No. 1.2 at 44-45.) It appears that he was not actually moved to a double cell, however, because his TRO motion indicates that he is still in a single cell (ECF No. 2 at 7), and while the exhibits set forth dates as to when Plaintiff was *approved* for a double cell, they do not clarify whether or when he

---

[2] As discussed below, the exhibits and the TRO motion suggest both that he may not have been in a single cell continuously during that entire period, and that he has been in a single cell beyond that period.

was actually moved to a double cell.  (*See* ECF No. 1.2 at 45; No. 1.3 at 58.)

Between September 2021 and March 2022, Plaintiff wrote multiple letters to Defendants (as well as to the SVSP Warden who preceded Allen, and who is not a Defendant) arguing that he needed a single cell to prevent attacks on him by other inmates, and he described in-cell fights in 2007 and in 2013 and 2014, and out-of-cell assaults in 2017, 2018, and 2021, with other inmates.  (ECF No. 1 at 13-16; No. 1.2 at 2-38, 47-56; No. 1.3 at 5-17, 21-48.)  In his March 7, 2022, letter to Plaintiff, Allen explained that Plaintiff had been approved for a single cell in 2018 for mental health reasons, not because it would protect him from inmate violence, and Allen explained the reasons given by classification officials, on October 1, 2021, that Plaintiff did not need a single cell.  (ECF No. 1-3 at 2-3.)  In April 2022, Plaintiff wrote a letter to Allen stating that his urological condition necessitated a single cell.  (ECF No. 1-3 at 52-53.)  On May 5, 2022, Allen explained that Plaintiff's doctor did not make a medical recommendation for a single cell.  (*Id.* at 55.)

Plaintiff had his next annual classification hearing recently, on August 9, 2022, at which Defendant Pizano approved him for a double cell with a "compatible" inmate, cited the same reasons as in the October 2021 decision, and also noted Plaintiff "has been Double Cell since [October 1, 2021] without any issues."  (ECF No. 1-3 at 57-58.)  At the August 9, 2022, hearing, Pizano also approved, subject to availability, Plaintiff's transfer to a "Non-Designated Housing Program" at one of two other prisons, in which inmates "program" together regardless of whether they were previously on a Sensitive Needs Yard (i.e. "SNY")[3] or in General Population (i.e. "GP").  (ECF No. 1.3 at 57.)

The complaint contains no factual allegations indicating when Plaintiff was moved into or out of a SNY.  It appears that he is still on an SNY because in his TRO motion, he states that he is currently housed in Facility A of SVSP, which is a SNY.  (ECF No. 2.)  The reports from his annual classification reviews at SVSP indicate that he has been housed in Facility A.  (ECF No. 1.1 at 24-27; No. 1.2 at 44-45; No. 1.3 at 57-58.)  In a letter to Allen on August 7, 2022, Plaintiff

---

[3] Because the papers do not distinguish between being on a SNY and "protective custody," the Court does not either.

3

states that he is in protective custody on a SNY, and he does not want to be moved to an NDPH yard.  (No. 1-3 at 60-61.)

**DISCUSSSION**

I. **Screening of Complaint**

A. Standard of Review

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief."  *Id.* § 1915A(b).  Pleadings filed by parties unrepresented by a lawyer must be liberally construed.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citations omitted).  Although to state a claim a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . .  Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).  A complaint must proffer "enough facts to state a claim for relief that is plausible on its face."  *Id.* at 1974.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

B. Analysis

The Eighth Amendment requires that prison officials take reasonable measures to

4

guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Id.* at 833. The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Id.* at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id.* at 837. Allegations in a complaint filed by a party not represented by an attorney sufficient to raise an inference that the named prison officials knew that the plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it state a failure-to-protect claim. *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). A prisoner need not wait until he is actually assaulted or harmed to state a claim and obtain relief. *Farmer*, 511 U.S. at 84.

Plaintiff's allegations that he was attacked twice at SVSP within the last two years, that his medical condition prevents him from defending himself, and that he informed all of the Defendants of these issues, when liberally construed in his favor, are sufficient to state claims upon which relief may be granted against Defendants for being deliberately indifferent to a substantial risk of harm from other inmates, in violation of the Eighth Amendment, by approving his move to a double cell or to a NDHP facility. Accordingly, Defendants shall be served and respond to the complaint pursuant to the schedule and provisions set forth below.

**II.     Motion for Temporary Restraining Order**

     A.     Standard of Review

The Prisoner Litigation Reform Act of 1995 ("PLRA") restricts the power of the court to grant prospective relief in any action involving prison conditions. *See* 18 U.S.C. § 3626(a); *Oluwa v. Gomez*, 133 F.3d 1237, 1239 (9th Cir. 1998). Section 3626(a)(2) applies specifically to preliminary injunctive relief. *See* 18 U.S.C. § 3626(a)(2). In civil actions with respect to prison conditions it permits the court to enter a temporary restraining order or preliminary injunction "to the extent otherwise authorized by law" but also requires that such an order "must be narrowly

1   drawn, extend no further than necessary to correct the harm the court finds requires preliminary

2   relief, and be the least intrusive means necessary to correct that harm." *Id.*

3     "A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be

4   granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Lopez v.*

5   *Brewer, et al.*, 680 F.3d 1068, 1072 (9th Cir. 2012) (citation omitted) (emphasis in original).  The

6   standard for issuing a TRO is similar to that required for a preliminary injunction.  *See Los*

7   *Angeles Unified Sch. Dist. v. United States Dist. Court*, 650 F.2d 1004, 1008 (9th Cir. 1981)

8   (Ferguson, J., dissenting).

9     "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

10   the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

11   balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v.*

12   *Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008).  The party seeking the injunction

13   bears the burden of proving these elements.  *Klein v. City of San Clemente*, 584 F.3d 1196, 1201

14   (9th Cir. 2009).  Under the "sliding scale" approach used in the Ninth Circuit, "the elements of the

15   preliminary injunction test are balanced, so that a stronger showing of one element may offset a

16   weaker showing of another."  *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132, 1131

17   (9th Cir. 2011).  "Under the 'serious questions' variation of the test, a preliminary injunction is

18   proper if there are serious questions going to the merits;[4] there is a likelihood of irreparable injury

19   to the plaintiff; the balance of hardships tips sharply in favor the plaintiff; and the injunction is in

20   the public interest." *Lopez*, 680 F.3d at 1072

21     Where the movant has failed to show a likelihood of success on the merits, a court need

22   not consider whether the movant would suffer irreparable injury.  *See Guzman v. Shewry*, 552 F.3d

23   941, 948 (9th Cir. 2009).

24     B. <u>Analysis</u>

25     While Plaintiff's papers are sufficient, when liberally construed, to satisfy 28 U.S.C. §

---

[4] The "serious consideration going to the merits" analysis is the same as a court's assessment of likelihood of success on the merits.  <u>Lopez</u>, 680 F.3d at 1073 (citing <u>M.R. v. Dreyfus</u>, 663 F.3d 1100, 1108 (9th Cir. 2011)) (plaintiff failed to raise serious questions going to the merits where the court determined that plaintiff failed to demonstrate a likelihood of success on the merits).

1915A by stating claims upon which relief may be granted under the Eighth Amendment, they are not sufficient to satisfy the higher standard for a TRO of showing that he is likely to succeed on the merits of such claims.

### 1. Single Cell Claim

Plaintiff has not shown that he is he is likely to succeed on his claim that approving him for a double cell violated his Eighth Amendment rights. His papers do not establish that it is likely that that a double cell would place him in a substantial risk of serious harm, which is the showing that Plaintiff would have to make to establish that Defendants were deliberately indifferent to his safety. *See Hearns*, 413 F.3d at 1040.

The exhibits indicate that the mental health recommendation for a single cell has been lifted, that he has no medical recommendation for a single cell, that Plaintiff has not had a fight in his cell in 14 years (since 2007), and that he does not have a pervasive history of committing violence or sexual assault. Plaintiff alleges that he also had fights with cellmates in 2013 and 2014, but those and the 2007 fights happened too long ago to constitute a substantial risk of serious harm from double-celling him many years later. The other alleged attacks occurred outside Plaintiff's cell once each of the years from 2018 and 2021. Plaintiff cites no authority, and the Court is aware of none, providing that the Eighth Amendment requires officials to give single cells to inmates with that type of assault history. The records indicate that the officials, when they approved him for a double cell, stipulated that he would be assigned a "compatible" cellmate (ECF No. 1.3 at 45), which presumably would not include any inmate involved in his prior altercations or with a history of conflict with Plaintiff. Plaintiff also is concerned that his mobility impairment leaves him unable to defend himself, but this vulnerability is not affected by having a double cell. Thus, Plaintiff has not shown that it is likely that a double cell creates a substantially greater likelihood that he will be harmed by another inmate.

The papers also do not show that Plaintiff has a medical need for a single cell based upon his medical condition. There is no indication that a double cell would not be wheelchair accessible, and Plaintiff's doctors did not opine that that his urological condition requires a single cell.

7

1       While a liberal construction of Plaintiff's allegations warrants service and the opportunity
2  for Plaintiff to present evidence that Defendants were deliberately indifferent to a substantial risk
3  of serious harm from giving him a cellmate, a TRO is not warranted because Plaintiff has not
4  shown at this stage that such a claim is likely to succeed. In light of this conclusion, the Court
5  need not address the other TRO factors. *See Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir. 2009)
6  (where the court concludes the movant has failed to show a likelihood of success on the merits, the
7  court need not consider other factors for a preliminary injunction/TRO).

        2.       <u>Protective Custody Claim</u>

9       Plaintiff has also not shown that he is likely to succeed on the merits of his claim that
10 Defendants violated his Eighth Amendment rights by approving him for transfer from a SNY to a
11 NDPH facility. The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321
12 (1996) ("PLRA"), provides that "[n]o action shall be brought with respect to prison conditions
13 under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or
14 other correctional facility until such administrative remedies as are available are exhausted." 42
15 U.S.C. § 1997e(a). An action must be dismissed unless the prisoner exhausted available
16 administrative remedies *before* he filed suit. *See McKinney v. Carey*, 311 F.3d 1198, 1199 (9th
17 Cir. 2002).

18      The California Department of Corrections and Rehabilitation ("CDCR") provides its
19 inmates two levels of administrative review for non-healthcare appeals by inmates, referred to as a
20 grievance and an appeal: At the first level, the inmate submits a form CDCR 602-1 to the
21 Institutional Office of Grievances at the prison or other facility where he is housed within 30 days
22 of the action that is the subject of the complaint. *See* 15 Cal. Code Regs. § 3482(a)-(c). At the
23 second level, an inmate dissatisfied with the Institutional Office of Grievances' decision at the first
24 level submits, within 30 days, a form CDCR 602-2 to the CDCR's Office of Appeals in
25 Sacramento. *Id.* at §§ 3481(a), 3485(a),(b).

26      Plaintiff states in conclusory fashion that he has exhausted all of his available
27 administrative remedies. (ECF No. 1 at 17.) However, the decision Plaintiff challenges in this
28 claim was made on August 9, 2022, only 15 days before he filed this case. It is unlikely that this

1    would be enough time for him to file an administrative grievance at the first level, receive a

2    decision from the Institutional Office of Grievances, file an appeal of that decision, and receive a

3    final decision on that appeal from the CDCR's Office of Appeals.  Plaintiff has not alleged when

4    he completed these steps, if he has, nor has he submitted any administrative grievances, appeals,

5    or other evidence of exhaustion.  While he need not do so to state a cognizable claim for relief

6    because failure to exhaust is an affirmative defense, *see Jones v. Bock*, 549 U.S. 199, 204, 216

7    (2007), he does need to do so to obtain a TRO in this case.  Because it is unlikely that he had time

8    to exhaust his claims, and he has not submitted evidence that he has in fact exhausted his claims,

9    he has not met this burden of showing a likelihood of success on this claim.

10   Plaintiff has also not shown a likelihood that there is a substantial risk of serious harm in

11   transferring him to an NDHP facility.  In *Kester v. Ruiz*, 2019 WL 3997483 *5 (N.D. Cal. 2019),

12   the district court granted a TRO to stop the plaintiff's transfer from the SNY to an NDHP facility.

13   The *Kester* plaintiff had, like Plaintiff, previously been attacked by inmates twice and had

14   mobility and mental health issues, but there were additional critical factors that made him a target

15   for violence at the hands of General Population ("GP") inmates that Plaintiff does not have: he

16   was a convicted sex offender,[5] had dropped out of a gang and helped law enforcement convict two

17   GP inmates, and two GP gangs had offered a bounty for his death.  *Id.*  (citing *Valandingham v.*

18   *Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (recognizing that being known as an informer can

19   expose inmate to violence from other inmates)).  These factors persuaded the court that the

20   plaintiff was likely to succeed on his claims, faced irreparable harm, and the balance of hardships

21   tipped sharply in his favor.  *Id.* at *4-5.

22   Unlike the plaintiff in *Kester*, Plaintiff does not offer evidence or even allege that he has

23   GP enemies, informed upon GP inmates, or that there is a GP bounty for his death.  Although

24   Plaintiff has disabilities and a history of being attacked by other inmates, there is no indication that

25   the risk of further attacks would be substantially greater on the NDPH facility than on the SNY.

26   The two attacks he suffered at SVSP in 2020 and 2021 were by SNY, not GP, inmates, and there

---

[5]The exhibits indicate that Plaintiff was convicted of murder.  (ECF No. 1.1 at 23))

1    is no indication as to whether Plaintiff was on a SNY or in GP between 2013 and 2018, when the

2    prior attacks that he alleges in his letters took place.  To the extent Plaintiff attributes those attacks

3    to his physical impairments, there is no indication that inmates with such mobility impairments are

4    particularly vulnerable to attacks by GP inmates, or that such impairments are generally a reason

5    that inmates are placed on an SNY.  Consequently, Plaintiff has not met his burden of showing

6    that it is likely that he could succeed on a claim that Defendants Pizano and Allen knew of and

7    disregarded a substantial risk of serious harm to Plaintiff in approving his transfer to an NDHP

8    facility.

9    For similar reasons --- the lack of a showing that Plaintiff is likely to be in greater danger

10   on an NDHP than on an SNY ---  Plaintiff has also not shown that he will likely suffer irreparable

11   injury without a TRO enjoining his transfer to an NDHP facility, or that the balance of hardships

12   tips in favor of enjoining the transfer.  While the public has an interest in preventing violence

13   between inmates, that interest is not great enough on its own to warrant a TRO.  *See Winter*, 557

14   U.S. at 520 (to obtain TRO, movant must show likelihood of success, irreparable injury, *and* that

15   injunction would be in public interest) (emphasis added).  Accordingly, no TRO is warranted

16   based upon this claim.

## CONCLUSION

For the foregoing reasons,

1. The motion for a TRO is DENIED.

2. Defendant Secretary Kathleen Allison shall be served at the California Department of Corrections and Rehabilitation.  Defendants Warden Trent Allen; Captain Lomeli; and Correctional Counselor Pizano shall be served at Salinas Valley State Prison.

Service shall proceed under the California Department of Corrections and Rehabilitation's (CDCR) e-service program for civil rights cases from prisoners in CDCR custody.  In accordance with the program, the Clerk is directed to serve on CDCR via email the following documents: the complaint, this order, a CDCR Report of E-Service Waiver form, and a summons.  The Clerk also shall serve a copy of this order on the Plaintiff.

No later than 40 days after service of this order via email on CDCR, CDCR shall provide

the Court a completed CDCR Report of E-Service Waiver advising the Court which Defendant(s) listed in this order will be waiving service of process without the need for service by the United States Marshal Service (USMS) and which Defendant(s) decline to waive service or could not be reached.  CDCR also shall provide a copy of the CDCR Report of E-Service Waiver to the California Attorney General's Office which, within 21 days, shall file with the Court a waiver of service of process for the Defendant(s) who are waiving service.

Upon receipt of the CDCR Report of E-Service Waiver, the Clerk shall prepare for each Defendant who has not waived service according to the CDCR Report of E-Service Waiver a USM-205 Form.  The Clerk shall provide to the USMS the completed USM-205 forms and copies of this order, the summons, and the complaint for service upon each Defendant who has not waived service.  The Clerk also shall provide to the USMS a copy of the CDCR Report of E-Service Waiver.

3. To expedite the resolution of this case:

a. No later than **91** days from the date this order is issued, Defendants shall file a motion for summary judgment or other dispositive motion.  The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56 and shall include as exhibits all records and incident reports stemming from the events at issue.  If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

b. At the time the dispositive motion is served, Defendants shall also serve, on a separate paper, the appropriate notice required by *Rand v. Rowland*, 154 F.3d 952, 953-954 (9th Cir. 1998) (en banc).  *See Woods v. Carey*, 684 F.3d 934, 940-941 (9th Cir. 2012).

c. Plaintiff's opposition to the dispositive motion, if any, shall be filed with the Court and served upon Defendants no later than **28 days** from the date the motion is filed. Plaintiff must read the attached page headed "NOTICE -- WARNING," which is provided to him pursuant to *Rand v. Rowland*, 154 F.3d 952, 953-954 (9th Cir. 1998) (en banc).

d. Defendants shall file a reply brief no later than **14** days after the opposition is

11

filed.

    e. The motion shall be deemed submitted as of the date the reply brief is due.  No hearing will be held on the motion unless the Court so orders at a later date.

  4. All communications by the plaintiff with the court must be served on defendants, or defendants' counsel once counsel has been designated, by mailing a true copy of the document to defendants or their counsel.

  5. Discovery may be taken in accordance with the Federal Rules of Civil Procedure.  No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16-1 is required before the parties may conduct discovery.

  Plaintiff is reminded that state prisoners inmates may review all non-confidential material in their medical and central files, pursuant to *In re Olson*, 37 Cal. App. 3d 783 (Cal. Ct. App. 1974); 15 California Code of Regulations § 3370; and the CDCR's Department Operations Manual §§ 13030.4, 13030.16, 13030.16.1-13030.16.3, 13030.21, and 71010.11.1.  Requests to review these files or for copies of materials in them must be made directly to prison officials, not to the court.

  6. It is the plaintiff's responsibility to prosecute this case.  Plaintiff must keep the court informed of any change of address and must comply with the court's orders in a timely fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**

Dated: August 30, 2022

*Jacqueline Scott Corley*
JACQUELINE SCOTT CORLEY
United States District Judge

**NOTICE -- WARNING (SUMMARY JUDGMENT)**

If Defendants move for summary judgment, they are seeking to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.

Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact-- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in Defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.